# IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS
## CIVIL DIVISION

**JIM WATSON, CYNDE WATSON, and
SHARON BOEHM HUSSMAN**                                                  **PLAINTIFFS**

v.                              CASE NO. 4:16-cv- 809 - JM

**MARK MARTIN, Arkansas Secretary
of State and chairman of the State
Board of Election Commissioners,
RHONDA COLE,
C.S. WALKER,
JAMES HARMON SMITH, III,
STUART SOFFER,
CHARLES ROBERTS, and
CHAD PEKRON, as Board Members
of the State Board of Election
Commissioners**                                                           **DEFENDANTS**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**NOV 02 2016**

JAMES W. McCORMACK, CLERK
By:_____
                                    DEP CLERK

This case assigned to District Judge _Moody_
and to Magistrate Judge_Kearney_

---

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

Plaintiffs, Jim Watson, Cynde Watson, and Sharon Boehm Hussman, for their

Complaint for Temporary Restraining Order and Injunctive Relief, state:

### Parties

1.     Plaintiffs Jim and Cynde Watson are residents of Marion County

Arkansas. They are both registered voters over 21 years of age. The Watsons went

to the Marion County Courthouse to vote early after the Arkansas Supreme Court

struck down initiated Issue Seven (7) from this year's election ballot. When they

were handed their ballots, they were told that two issues appeared on the paper

1

ballot but they had been removed. The two that were described as removed were the Issues concerning casino gambling and medical malpractice limits. Plaintiff Cynde Watson told the poll worker that Issue Seven (7) had also been removed from the ballot according to the news. The poll worker responded "oh no, it has not." The Watsons were told that Issues Six (6) AND Seven (7) were both on the ballot and that there was no way they could be removed now because so many early voters had cast their ballots.[1] The poll worker said that if a change had been made, she would have told the Watsons. She said that someone was "messing with you" and that both Issues were on the ballot. Plaintiff Cynde Watson did not believe the poll worker and voted for Issues Six (6) and Seven (7) (hereafter "6" and "7"), even though she had planned to vote only for Issue 7 before she learned that the Arkansas Supreme Court has stricken it from the ballot. However, Jim Watson voted for 7 based on the poll worker's advice. If he had been given accurate information, he would have voted for Issue 6 either alone or in combination with Issue 7. He was disenfranchised of his right to vote for the Issue of his choice in violation of the First and Fifth Amendments to the United States' Constitution.

---

[1] Both Issues 6 and 7 were certified by the Secretary of State through the initiative and referendum process. The two issues have been routinely described as "competing measures" related to the legalization of medical marijuana in Arkansas. But the Arkansas Supreme Court struck Issue 7 from the ballot on October 27, 2016 after the ballots had been printed and early voting had been occurring since October 20, 2016. Although struck from the ballot, Issue 7 still appears on the ballots along with Issue 6.

2.     Plaintiff Sharon Boehm Hussman is a resident of Pulaski County, Arkansas. She is over the age of 21 and is a registered voter in the State of Arkansas. She has not voted yet, but plans to vote for Issue 6 on the ballot. She is concerned about the confusion surrounding Issues 6 and 7, in particular with the fact that the Arkansas Supreme Court struck down Issue 7 after early voting had begun and an estimated 10% to 20% of all votes that will be cast had been made. She also is concerned with the fact that there is no prominent notice posted at any of the polls where voters are likely to be informed that votes on Issue 7 will not be counted and that the only medical marijuana issue on the ballot is Issue 6. The posted ballots on the walls of most polling location do not have Issue 7 stricken through as they should. And even though stricken by the Arkansas Supreme Court, Issue 7 remains on the ballot.  The two Issues – 6 and 7 – have been described as "competing" measures and many people would have voted for 6, or will vote for 6, if they knew/know that votes for 7 would not count.

3.     Mark Martin is the Secretary of State for the State of Arkansas, and as such, Mark Martin is the State's chief election official. See *Martin v. Kohls*, 2014 Ark. 427, 444 S.W.3d 844 (2014).

4.     The State Board of Election Commissioners is the Arkansas entity with the authority to train and direct the county clerks and the county election

commissioners across the state of Arkansas. *See Id.* Defendant Mark Martin is the Chairman of the State Board of Election Commissioners.

5.      Defendants Mark Martin, Rhonda Cole, C.S. Walker, James Harmon Smith, III, Stuart Soffer, Charles Roberts, and Chad Pekron, in their capacity as active Board Members for the Arkansas State Board of Election Commissioners, have the authority to direct the county clerks and the county election commissioners across the state of Arkansas to comply with the action sought by Plaintiffs.

## Simple Synopsis of Relevant Facts

6.      As an initial note, this pleading is styled as a TRO/Injunction because immediate relief is necessary. However, a copy of this pleading will be sent to both Defendants before or at the time that this pleading is filed, or as soon as possible thereafter. Plaintiffs seek an immediate temporary restraining order and, following that, mandatory injunctive relief. Attached to this Complaint as **Exhibit 2** is the affidavit of undersigned counsel describing the efforts undertaken to serve the Defendants with this Complaint. This Affidavit is submitted in compliance with Federal Rule of Civil Procedure 65(b)(1)(B). In short, Plaintiff expects to have a process server serve the Complaint on the Defendants as soon as they can be located after this Complaint is filed.

7.     Two competing statewide ballot issues related to the legalization of marijuana for medical purposes were approved by the Attorney General and placed on the ballot for the election to be held on November 8, 2016. Issue 6 is a constitutional amendment. Issue 7 would create a state statute. Early voting began on October 24, 2016. On October 27, 2016, the Arkansas Supreme Court ruled that votes for Issue 7 would not be counted because there were an insufficient number of qualified signatures on the petitions submitted by its backers. At the time that the Arkansas Supreme Court struck Issue 7 from the ballot, somewhere between 100,000 and 200,000 people had voted early. In the 2012 presidential election, 1,078,548 Arkansans voted in the election. So approximately 10% to 20% of Arkansas voters had already voted by the time that the Supreme Court decision striking down Issue 7 was announced.[2]

8.     Plaintiffs seek to increase the likelihood that the election that is held complies with federal due process in light of this unusual situation. This means ensuring that voters from this point forward are properly informed at their polling location that votes on Issue 7 will not be counted. The notice should also advise that Issue 6 is the only medical marijuana initiative on the ballot where the votes will be counted.  Presently, there are either no notices posted at the polls to this effect, or

---

[2] These figures were as of Friday, October 27. There have been nearly three days of early voting since then, so the number is certainly substantially higher at this point.

they are posted in inconspicuous places where they are unlikely to be seen by the majority of voters.  For example, the early voting location in Pulaski County—directly across from the Courthouse—has the following on the front door of the polling location:



9.     The small orange posting on the bottom left of the door explains that votes will not be counted on the following Issues: It lists Issues 3 and 5 and has a brief explanation associated with each Issue. The third Issue listed is Issue 7, and all

the post says about 7 is that it is the Medical Cannabis Act. The portion of the "notice" stating that votes on Issue 7 will not be counted is indicated with a pen mark. Issues 3 and 5 are placed first on the list even though they have no competing measures in the election. This Complaint seeks to ensure that the election complies with due process and is less vulnerable to challenge regardless of the outcome. This means attempting to create a voting environment where a voter cannot help but be informed that votes for Issue 7 will not count. Plaintiffs seek to ensure that regardless of whether Issue 6 wins at the ballot, there will be less of a basis for challenge to the election.

10.    Here is a photograph of the early voting location at 1800 Chester Street in Little Rock. The first thing you see at the front door of the library where the early voting takes place is the following:



There are ballot samples and other election related material posted on this door. But nothing is posted about Issue 7 votes not counting. As you go further into the building, the next group of notices you pass looks like this:



Once again, there are posts about voting, but nothing about Issue 7 being stricken from the ballot.

11.     Finally, if one continues down the dark hall to the voting room, there is another series of postings showing ballot examples. The same notice that was posted on the door at the other Pulaski County early voting facility initially mentioned was posted in this hallway as follows:



The important information is in the spot indicated on the bottom of the top piece of paper and is designated by pen mark.

12.    The pictures above were not taken from selected polling places. Undersigned counsel simply went to the two of the early voting locations closest to his office. Wagoner Mann & Kemp, PLLC has received many complaints about poll workers giving incorrect information about the issue at hand.  Callers have also reported that no sign was placed at the polling place where they voted to alert them that Issue 7 had been struck down by the Supreme Court. Whatever notice is required in order to comply with due process in this highly unusual situation, the notice being provided at present does not meet the requirements of federal law and this Court should dictate and provide for notice to be given "in the best manner possible" to voters about this confusing issue. Plaintiff suggests two potential remedies in this Complaint, but the Court may well come up with better suggestions.

13.    This case concerns a second matter pertaining to the voters who were disenfranchised as a result of having voted for Issue 7 before the Arkansas Supreme Court struck it down. Regardless of whether Issue Six 6 succeeds at the ballot, Plaintiffs ask that there be a method put in place to "cure" the due process violation for the ten to twenty percent of Arkansans that have already voted. Those voters should not be disenfranchised as Mr. Watkins was. Plaintiff suggests that if an individual is willing to fill out an affidavit stating that he or she previously voted for Issue 7 because they believed it was on the ballot, and that they would have voted for Issue 6 if they knew it was the only option, then that individual should be able to

vote for Issue 6 based on the sworn affidavit. Plaintiff does not request a TRO to this effect, but asks for a mandatory injunction requiring Defendants to order that such a process be implemented after notice to Defendants and a hearing on the issue.

14.   Based on the above, Plaintiffs seek to have this Court order to Defendants to instruct that all polls in Arkansas hand an 8 and ½ by 11 inch piece of paper containing the following information, in at least 32 point font[3], to each voter.

# NOTICE: ALTHOUGH YOU WILL STILL SEE ISSUE SEVEN (7) ON YOUR BALLOT, IF YOU VOTE FOR ISSUE SEVEN (7), THE ARKANSAS SUPREME COURT HAS RULED THAT YOUR VOTE WILL NOTE BE COUNTED.

# THE ONLY REMAINING ISSUE ON THE BALLOT RELATED TO MEDICAL MARIJUANA IS ISSUE SIX (6). VOTES FOR OR AGAINST ISSUE SIX (6) WILL STILL BE COUNTED.

15.   The paper with this information on it should be a separate

---

[3] 32 pt. font is the largest font that will allow the notice to be printed on one piece of 8 and ½ by 11 inch paper.

piece of paper not combined with any other information. This is because, with the other Issues that remain on the ballot even though they have been stricken, neither of those Issues had any "competing issue" on the ballot as was/is the case with Issues 6 and 7. Because of the due process and First Amendment issues created by: (1) Issue 7 being stricken from the ballot after early voting had started, and; (2) two competing issues both remaining on the ballot despite the fact that votes for one of the issues will not be counted, voters are entitled to notice of this fact as the *minimum* that due process requires. And there is no reason that *actual* notice cannot be given to each and every voter prior to the voter going into the polling booth.

16.   The remedy requested will entail little expense and could be put into effect immediately as each county certainly has access to a computer and printer that will allow them to print the required notices. Statewide there will be a lot of these notices. But on a precinct by precinct basis, it amounts to only a few hundred pieces of paper. And each county certainly has the ability to immediately print out the appropriate number of the required notices and distribute them to the early voting locations and the precincts where voting will occur on November 8.

17.   If the Court believes that what Plaintiff requests is too burdensome, an alternate (but possibly less effective) method of ensuring notice would be to require that the notice attached to this Complaint as **Exhibit 1** be posted in at least three prominent locations at each polling location. Currently, if any notice is provided at

all, it is being placed in inconspicuous locations at the polls as seen in the photographs in this Complaint. Sufficient information is not provided in this notice, particularly when it is combined with the notice of two other Issues that have been stricken from the ballot. Without notice, a voter goes in the ballot box and sees that 7 is still on their ballot, so they think they can vote for it – whereas if they had the proper notice, they would have voted for the competing measure. This creates confusion at the ballot box. Here, the actions of many voters with respect to voting for or against Issue 6 may well be different depending upon whether they believe Issue 7 is still on the ballot or not. The posted notices on the issue at hand should be on a separate piece of paper in least 32 pt. font. If the Court believes that this is a more appropriate remedy, Plaintiffs are willing to pay the expense of having sufficient notices printed so that three (3) notices will be available for posting at each voting location.

.

## Basis for Federal Court Jurisdiction

18.    This Court has Federal Question jurisdiction over this matter under 28 U.S.C. § 1331(a) and 28 U.S.C. § 1343(3) read in connection with 42 U.S.C. § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*See also McLain v. Meier*, 612 F.2d 349, 350 (8th Cir. 1979) (stating that federal jurisdiction was proper where an independent candidate, in his capacity as a registered voter, challenged state election statutes).

19.    The right to vote is a fundamental right. *Williams v. Rhodes*, 393 U.S. 23, 38 (1968). "Thus while states enjoy a wide latitude in regulating elections and in controlling ballot content and ballot access, they must exercise this power in a reasonable, nondiscriminatory, politically neutral fashion." *Miller v. Moore*, 169 F.3d 1119 (8th Cir. 1999). Federal courts have commonly become involved in state election disputes when constitutional issues are implicated. See, *e.g.*, *Anderson v. Martin*, 375 U.S. 399, 401-02; *McClain v. Meier,* 637 F.2d 1159, 1167 (8th Cir. 1980). Citing these cases, the *Miller* Court held that "a state's legitimate interests in regulating elections are limited to promoting "orderly, fair, and honest elections." *Miller*, supra, quoting *U.S. Term Limits v. Thornton,* 514 U.S. 779, 834 (1995). The cases cited, such as the *McClain* case, are not just concerned with elections for national offices. The majority of them involve state election candidates and issues.

20.    A "citizen's right to vote without arbitrary impairment by state action has been recognized as a right secured by the Constitution." *Smith v. Arkansas Board*

*of Election Commissioners,* 2016 WL 1367771 (E.D. Ark. 2016), citing *Baker v. Carr,* 369 U.S. 186, 206 (1962).

21.    Here, the fundamental rights of the Plaintiffs are being violated, or have been violated, through the actions or inactions of state officials.  Their rights under the U.S. Constitution are being violated as follows:

a.    The due process rights of hundreds of thousands of voters are being violated by the fact that Issue 7 remains on the ballot, but insufficient notice is being provided at the polling locations to inform the voters that Issue 7 has been stricken by the Supreme Court. and, although Issue 7 appears on the ballot, votes on 7 will not be counted. The voters should also be informed that the only medical marijuana Issue remaining on the ballot is Issue 6. Voters are confused. This is because many voters will believe that because they see Issue 7 on their ballot that must mean they can vote for it. So they vote for 7 if they favor it over 6.  But if they had known the truth, the same voter would likely have voted for Issue 6 – just as Plaintiff Jim Watson claims. The violation of the due process clause of the 5th Amendment to the U.S. Constitution is occurring, and has occurred, as a result of the series of events described in this Complaint. And the damage continues as each new voter casts a vote.

b.    The Plaintiffs rights under the U.S. Constitution's First Amendment's provisions regarding freedom of expression and speech includes the right to vote and

to have the candidate or issue they support addressed in an election that is "orderly, fair, and honest" and does not compromise the issue they are supporting. The continuance of early voting, and the holding of the election on November 8, 2016, without providing adequate notice that one of two competing ballot issues had been stricken by the Supreme Court, while the measure still remains on the ballot, creates a situation that is neither orderly, fair, or honest absent *clear* notice to voters of the facts. And these constitutional violations, not only of Plaintiffs' rights, but of hundreds of thousands of other Arkansan's rights, is ongoing. There is no reason that the Court should not require the notice requested in order to alleviate any confusion at the ballot.

### Basis for Standing

22.    The standing issue merges with the federal jurisdiction issue to some extent. This is because the same 8th Circuit case holding that voters have a right to access the federal courts to remedy unconstitutional election procedures and issues also addresses standing. The Eighth Circuit's *Miller v. Moore* case discussed above also addressed the issue of the standing of individual voters to seek relief regarding unconstitutional election issues. In *Miller,* the State of Nebraska decided to identify on its ballots which candidates supported another term limits proposal that was on the ballot. The *Miller* Court stated:

> ...we must decide whether Messrs. Duggan, Hoer, Lineweber, Miller, and
> Withem, as registered voters, have standing to challenge these provisions. In

reviewing ballot regulations such as Article XVIII, "our primary concern is not the interest of [the] candidate ... but rather, the interests of the voters who chose to associate together to express their support for [that] candidacy and the views ... espoused." *Anderson v. Celebrezze,* 460 U.S. 780, 806, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). A voter therefore has standing to challenge a state law regulating elections when that law "would restrict his ability to vote for the candidate of his choice or dilute the effect of his vote if his chosen candidate were not fairly presented to the voting public." *McLain v. Meier,* 851 F.2d 1045, 1048 (8th Cir.1988) (holding that voter had standing to challenge ballot access law that he claimed was overly restrictive in signature requirements and deadlines). In our case, the voters contend that Article XVIII's pejorative ballot labels injure them by greatly diminishing the likelihood that the candidates of their choice will prevail in the election. We agree with the district court's finding that this constitutes a sufficiently concrete and particularized injury to give the plaintiffs standing in the case before us.

Miller v. Moore, 169 F.3d 1119, 1123 (8th Cir. 1999)(emphasis supplied).

23.     The *Miller* Court cited the *McClain v. Meier* case, supra, for the rule that a voter has standing to challenge the election issue if there is a possibility that the state's action (or inaction) may "dilute the effect of his vote if his chosen candidate were not fairly presented to the voting public." *McLain v. Meier,* 851 F.2d 1045, 1048 (8th Cir.1988). And the *McClain* case is *the* controlling Eighth Circuit law on the issue. Based on this rule, if the two competing issues and what has taken place with them is not fully explained and understood by the voters, the effect will be to dilute the votes for Issue 6. Voters believing they have to choose between Issues 6 and 7 see that Issue 7 is still on their ballot and think that must mean they can still vote for it. Others voted for 7, but would have voted for 6 if they had known the true facts. All of the plaintiffs have standing on this basis.

## Relief Requested from This Court

24.     Plaintiffs request that the Court find:

a.      That voters are entitled to understand the situation that has occurred with respect to Issues 6 and 7 and that their due process rights are currently being violated as more people vote without the voters being provided sufficient information to clarify why they will still see Issue 7 on the ballot, that their vote will not count if they vote for Issue 7, and that Issue 6 is the only remaining medical marijuana proposal on the ballot.

b.      That the ongoing violation of a constitutional right always constitutes irreparable harm. *See, e.g., Elrod* v. *Burns*, 427 U.S. 347, 373 (1976) (loss of constitutional "freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury") Plaintiffs have suffered injury-in-fact for the reasons noted above in this Complaint.

c.      That Plaintiffs are suffering and continue to suffer irreparable harm.

d.      That the best possible notice in the current situation is actual notice, and the Defendants can order the polling locations to comply and compliance can occur at minimal expense. Poll workers could begin handing out the notices within hours of the Court entering a Temporary Restraining Order enjoining these

ongoing constitutional violations and requiring the notice requested to be handed to each voter at the poll. Alternatively, the request for three (3) notices with the language recited hereinabove should be ordered to be posted at all polling locations immediately. This Court should order Defendants to instruct the poll workers and county election commissioners to implement whatever relief the Court determines is appropriate on an immediate basis.

e.      That there are serious constitutional issues at stake in connection with Due Process issues and First Amendment rights, and the concern that inadequate notice of the actions of the Arkansas Supreme Court on Issue 7 have created an election that is compromised and not "orderly, fair, and honest." This affects hundreds of thousands of Arkansas voters. The only imposition imposed upon the Defendants who will be responsible for ensuring that the notice ordered by this Court be given is the cost of printing the notices.  On balance, the equities lay strongly in favor of Plaintiffs.

WHEREFORE, Plaintiffs pray that this Court issue a mandatory Temporary Restraining Order requiring Defendants to order that the actual notice requested herein be printed and a copy furnished to each County Election Commission with instructions to immediately begin handing a copy of the notice to each voter; that, alternatively, the Court require posting of the notice attached as **Exhibit 1** to this

Complaint immediately in at least three prominent places at each voting location;

that Plaintiff Jim Watson and other voters who voted before the Arkansas Supreme

Court struck Issue 7 from the ballot be allowed to vote again on Issue 6 upon filing

an affidavit stating that they voted for 7 before the Supreme Court issued its

October 27, 2016 ruling, but would have voted for 6 if they had not had 7 as an

option. The latter relief is not requested as a part of the TRO, but should be

addressed as soon as possible after legal notice has been provided to Defendants

and a hearing can be scheduled; for any attorneys' fees available under any

applicable statute or law, including but not limited to 42 U.S.C. 1988; and for the

costs of the action.

Respectfully submitted,

Wagoner Mann & Kemp, PLLC

By: _____

Jack Wagoner III, A.B.A. # 89096
Angela Mann, A.B.A. # 2011225
James Harrison Kemp, A.B.A. #08307
Kolton Jones, A.B.A. #2016136
Wagoner Mann & Kemp, PLLC
1320 Brookwood, Suites D & E
Little Rock, AR 72202
Phone: (501) 663-5225

**VERIFICATION**

STATE OF ARKANSAS ⟩

COUNTY OF PULASKI ⟩

I, Sharon Boehm Hussman, after being first duly sworn, state on oath that the facts set forth in the foregoing Complaint for Temporary Restraining Order and for Injunction Relief are true and correct to the best of my knowledge, information and belief.

Sharon Boehm Hussman

Sworn to and subscribed before me this 2 day of November, 2016.

My Commission Expires:

10/7/26

NOTARY PUBLIC

12

## VERIFICATION

STATE OF ARKANSAS            )
                            )
COUNTY OF PULASKI            )


     I, Cynde Watson, after being first duly sworn, state on oath that the facts set forth in the foregoing Complaint for Temporary Restraining Order and for Injunctuve Relief are true and correct to the best of my knowledge, information and belief.

_Cynde Watson_ _____
**Cynde Watson**


Sworn to and subscribed before me this ⎽2⎽ day of November, 2016.

My Commission Expires:

_10/07/2024_

_____
NOTARY PUBLIC



SHANA BUTERBAUGH
Exp. 10/07/2024
NOTARY PUBLIC
Comm. # 12699148
PULASKI COUNTY, ARKANSAS

**VERIFICATION**

**STATE OF ARKANSAS** )

)

**COUNTY OF PULASKI** )

    I, Jim Watson, after being first duly sworn, state on oath that the facts set forth in the foregoing Complaint for Temporary Restraining Order and for Injunctive Relief are true and correct to the best of my knowledge, information and belief.

_____
Jim Watson

    Sworn to and subscribed before me this ⊆ day of November, 2016.

My Commission Expires:

10/07/2024

_____
NOTARY PUBLIC



NOTICE:

ALTHOUGH YOU WILL STILL SEE ISSUE SEVEN (7) ON YOUR BALLOT, IF YOU VOTE FOR ISSUE SEVEN (7), THE ARKANSAS SUPREME COURT HAS RULED THAT YOUR VOTE WILL NOT BE COUNTED.

THE ONLY REMAINING ISSUE ON THE BALLOT RELATED TO MEDICAL MARIJUANA IS ISSUE SIX (6). VOTES FOR OR AGAINST ISSUE SIX (6) WILL STILL BE COUNTED.



# IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS
## CIVIL DIVISION

| | |
|---|---|
| **JIM WATSON, CYNDE WATSON, and SHARON BOEHM HUSSMAN,** | **PLAINTIFFS** |

)
)
)     Case No. _____CV-_____
)
vs.                             )
)

**MARK MARTIN, Arkansas Secretary State and chairman of the State Board of Election Commissioners, RHONDA COLE, C.S. WALKER, JAMES HARMON SMITH, III, STUART SOFFER, CHARLES ROBERTS, and CHAD PEKRON, as Board Members of the State Board of Election Commissioners**       **DEFENDANTS**

---

## RULE 65(b)(1)(B) AFFIDAVIT OF PLAINTIFF'S COUNSEL

---

I, Jack Wagoner III, state on oath:

On this date I have caused to be filed the above-styled Complaint for Temporary Restraining Order and Injunctive Relief.

Plaintiff's Counsel has already notified a process server to come to his office at 2:00 pm today in order for him to attempt to serve process on all Defendants. All Defendants will be personally served as soon as they can be located by the process server.

FURTHER AFFIANT SAYETH NOT.



Respectfully submitted,

Jack Wagoner III

By: _____
Jack Wagoner, III A.B.A. # 89096
WAGONER MANN & KEMP PLLC
1320 Brookwood, Suites D & E
Little Rock, AR 72202
Phone: (501) 663-5225
Email: jack@wagonerlawfirm.com

## VERIFICATION

STATE OF ARKANSAS       )
                        )
COUNTY OF PULASKI       )


    I, Jack Wagoner III, after being first duly sworn, state on oath that the facts set forth in the foregoing Affidavit are true and correct to the best of my knowledge, information and belief.


_____
Jack Wagoner III

## ACKNOWLEDGEMENT

STATE OF ARKANSAS       )
                        )
COUNTY OF PULASKI       )

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES

_10/07/2024_