IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

JIM WATSON, et al.                                                                                    PLAINTIFFS

vs.                                           No. 4:16-cv-809-JM

MARK MARTIN, et al.                                                                               DEFENDANTS

### Response in Opposition to Plaintiffs' Request for a Temporary Restraining Order and Incorporated Motion to Dismiss

The Members of the State Board of Election Commissioners ("State Board") offer the following response in opposition to Plaintiffs' request for a temporary restraining order, and incorporated motion to dismiss. Plaintiffs' request for a temporary restraining order should be denied, and the complaint should be dismissed. Plaintiffs lack standing because they cannot establish that their injury is fairly traceable to actions taken by the State Board—it is clear that the action about which Plaintiffs complain is a ruling by the Arkansas Supreme Court. Plaintiffs also lack standing because they cannot establish that the State Board has the legal authority to order county election officials to do anything—in other words, Plaintiffs have sued the wrong defendants. The suit is also separately barred by sovereign immunity under the Eleventh Amendment. Even if Plaintiffs could cross these threshold bars, the requested relief is plainly prohibited by the Arkansas electioneering statute. Even if the complaint was not barred due to lack of standing and sovereign immunity, and the requested relief was not expressly prohibited by Arkansas law, the Court should abstain from injecting itself into the Arkansas election and issues regarding proposed measures of Arkansas law that have already been addressed by the Arkansas Supreme Court.

**I.     Background**

Plaintiffs generally contend that they should be granted extraordinary relief by this Court because on October 27, 2016, after the beginning of early voting for the upcoming general election, the Arkansas Supreme Court ruled that votes for Issue 7 will not be counted due to deficiencies in the signature count for that measure. Plaintiffs do not challenge the merits of that Arkansas Supreme Court ruling in this case, nor could they. The Arkansas Supreme Court, of course, is the final arbiter of the validity of Arkansas ballot measures and other issues regarding Arkansas law.

Plaintiffs contend that Issue 6, which has been on the ballot since the beginning of early voting and will remain on the ballot, and for which votes will be counted, and Issue 7, are "competing" measures and are somehow intertwined—but Issues 6 and 7 appear separately on voters' ballots, Issues 6 and 7 do not refer to each other or depend on each other in any way, and Issues 6 and 7 are not described on ballots as "competing" or otherwise related. Plaintiffs apparently base their contention that the measures are "competing" (or somehow related) on media reports that have often covered and described the measures together as "competing" measures regarding medical marijuana.

Plaintiffs contend that Plaintiffs and similarly-situated voters are confused and/or will be confused due to the Arkansas Supreme Court's October 27 ruling regarding Issue 7, and that this confusion has an effect on voting regarding Issue 6. Plaintiffs ask the Court for a temporary restraining order requiring the Members of the State Board and/or the Secretary of State to order the county clerks and county election commissions of Arkansas to either provide a copy of a notice prepared by Plaintiffs to every voter in Arkansas when voters visit polling places, or post copies of Plaintiffs' proposed notice in three conspicuous locations at every voting location in

Arkansas.  Plaintiffs also appear to request additional relief involving somehow allowing certain voters to change their vote by affidavit, but that additional relief does not appear to be at issue in the request for a temporary restraining order.

As referenced in the complaint, the Secretary of State has apparently already provided a notice to county officials administering the election in Arkansas, and suggested that those county officials post the notice at polling locations to inform voters regarding the Arkansas Supreme Court's ruling regarding Issue 7, and separate rulings invalidating Issue 4 and Issue 5.  A copy of that notice is attached to this response as Exhibit A.  The notice plainly states that "pursuant to court orders, votes for the following measures will not be counted or certified"—then the notice lists the popular name for Issue 4, the popular name for Issue 5, and the popular name for Issue 7, in sequential order.  The notice that has already been provided and that has been recommended for posting by county officials treats the invalidated issues equally.  The notice demanded by Plaintiffs separately addresses only Issue 7 and provides heightened notice regarding the invalidation of that Issue without reference to Issues 4 and 5.  And the notice demanded by Plaintiffs discusses Issue 6, which has not been invalidated, and suggests that voters who wished to vote for Issue 7 should now vote for Issue 6.  As explained below, Plaintiffs' proposed notice constitutes electioneering that is prohibited by Arkansas law.

The Court should deny the request for a temporary restraining order for several reasons, as explained more fully below.  For reasons also explained below, the Court should dismiss the complaint for failure to state a claim upon which relief can be granted.

**II.    Standard of Review**

The United States Supreme Court and the Eighth Circuit Court of Appeals have made clear that a temporary restraining order is an extraordinary and drastic remedy, and should not be granted unless plaintiffs clearly carry their burden of persuasion. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."); *Sanborn Mfg. Co., Inc. v. Campbell/Hausfield Scott Fetzer Co.*, 997 F.2d 484, 485-96 (8th Cir. 1993) (the burden on the movant "is a heavy one"). In this case, Plaintiffs cannot meet the four elements set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.3d 109 (8th Cir. 1981). The request for a temporary restraining order should be denied.

When ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court accepts the allegations contained in the complaint as true, and reasonable inferences from the complaint are drawn in favor of the nonmoving party. *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). A motion to dismiss is properly granted when, based on the plaintiff's own allegations, it is plain that the defendant is entitled to judgment as a matter of law. "Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young*, 244 F.3d at 627.

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. "Nor does a complaint suffice if it tenders

4

'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id*. (citing *Twombly*, 550 U.S. at 570). This pleading standard is satisfied if the complaint's "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "A gallimaufry of labels, conclusions, formulaic recitations, naked assertions and the like will not pass muster." *Christiansen v. West Branch Community Sch. Dist.*, 674 F.3d 927, 934 (8th Cir. 2012) (citing *Twombly*, 550 U.S. at 555-557). "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

**III.** **Argument**

    **A.** **Standing**

Plaintiffs' request for a temporary restraining order should be denied and the complaint should be dismissed because Plaintiffs cannot meet two of the three necessary elements to establish standing and confer jurisdiction on this Court. The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). "[A] federal court lacks jurisdiction over a case unless the plaintiff has standing to sue under Article III of the Constitution." *Miller v. Redwood Toxicology Laboratory, Inc.*, 688 F.3d 928, 935 (8th Cir. 2012). Accordingly, "[w]hether there is Article III standing to hear a claim is always an antecedent question." *Id*. (Citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–96 (1998)). Article III of the United States Constitution grants the judicial branch the authority to adjudicate "Cases" and "Controversies." *Id*. "In order to invoke

the jurisdiction of the federal courts, the parties must demonstrate an actual, ongoing case or controversy within the meaning of Article III of the Constitution." *Iron Cloud v. Sullivan*, 984 F.2d 241, 242 (8th Cir. 1993).

Courts have "no business" deciding legal disputes or expounding on law in the absence of a case or controversy. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). An "actual controversy" must exist at the beginning of the case, and must persist through "all stages" of the litigation. *Alvarez v. Smith*, 558 U.S. 87, 92 (2009). *See also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."). A federal court is not empowered "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (internal quotation marks omitted). The mootness doctrine therefore requires a federal court to refrain from deciding a case if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).

Article III standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1968). To establish standing under Article III, a plaintiff must show that: (1) he personally has suffered some actual or threatened injury as a result of the allegedly illegal law; (2) the injury fairly can be traced to the challenged action of the defendant; and (3) the injury is likely to be redressed by a favorable decision by the Court. *See Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). Although a plaintiff "does not have to await the consummation of threatened injury to obtain preventative relief[,]"

the injury must be "certainly impending[.]" *Id*. Standing is "assessed under the facts existing when the complaint is filed." *Lujan*, *supra*, 504 U.S. at 560 (plurality opinion). Standing is a jurisdictional issue that this court "is bound to ask and answer for itself, even when not otherwise suggested." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998).

As the Eighth Circuit recently explained in *Duit Construction Co., Inc. v. Bennett*, 796 F.3d 938 (8th Cir. 2015), Plaintiffs must establish Article III standing "to assert *this* claim against *these* defendants." *Id*. at 939 (emphasis in original) (citing *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006)). In *Duit*, the plaintiff lacked standing to sue the Arkansas State Highway and Transportation Department for alleged constitutional violations, and the district court therefore lacked jurisdiction, because the plaintiff's complaint really complained of the actions of a state tribunal—the Arkansas State Claims Commission—in a different case:

> We take up the threshold issue of standing first because in our view it is clear from Duit's complaint that it cannot satisfy the "fairly traceable" (causation) and redressability elements of standing with respect to its equal protection claim. **Put briefly, it has sued the wrong parties**. Duit's complaint alleged that the *Claims Commission* made a favorable ruling on "an almost identical" claim by an in-state contractor "based, in part, upon the State of origin of the claimant and the size of the claim."
>
> As to causation, Duit failed to sue the Claims Commission or its members, and failed to allege that defendants—Arkansas highway officials—influenced, or had the authority and ability to influence, the Claims Commission's adjudication of contractor claims against the State. **When the injury alleged is the result of actions by some third party, not the defendants, the plaintiff cannot satisfy the causation element of the standing inquiry. This principle applies even when the defendants are state officials sued in their official capacity.**
>
> **As to redressability, because defendants have no control over the Claims Commission's practices, they have no powers to redress the injuries alleged, that is, no power to correct the Claims Commission's purported practice** of favoring in-state contractor claimants. Thus, it is totally speculative whether the

> only relief requested in the complaint—an injunction preventing the defendants from accepting federal highway aid—would have any effect on the practices of the Claims Commission, a separate Arkansas government entity. Mere speculation is insufficient to satisfy this element of standing. For these reasons, Duit's equal protection claim is not within the district court's Article III jurisdiction and must be dismissed.

796 F. 3d at 941 (emphasis added; internal citations and quotations omitted). The logic of *Duit* applies seamlessly to this case. Plaintiffs cannot satisfy two of the three necessary standing elements, and the Court therefore lacks jurisdiction.

Plaintiffs cannot satisfy the second standing element—that their alleged injury is fairly traceable to the alleged actions of the State Board—because it is clear that Plaintiffs' alleged injury is connected to the Arkansas Supreme Court's October 27 ruling on Issue 7, not to any action of the Members of the State Board. Just as in *Duit*, in this case the *action* that Plaintiffs complain about was taken by a tribunal that is not before this Court (and should not be). To the extent that Plaintiffs complain about the *inaction* or insufficient actions of *county election officials* in the aftermath of that ruling by the Arkansas Supreme Court, those parties are also not before the Court. The complaint specifies *no* action taken by the Members of the State Board that has resulted in any violation of Plaintiffs' constitutional rights. Plaintiffs lack standing, and the Court lacks jurisdiction.

Plaintiffs also cannot satisfy the third element of standing—redressability—because the State Board lacks the legal authority to *order* county election officials to post specific notices in specific ways, or do anything else at the command of the State Board in the conduct of an election. The State Board's authority is found at Ark. Code Ann. § 7-4-101(f), which provides:

> The board shall have the authority to:
>
> (1) Publish a candidate's election handbook, in conjunction with the office of the Secretary of State and the Arkansas Ethics

8

Commission, which outlines in a readable and understandable format the legal obligations of a candidate and any other suggestions that might be helpful to a candidate in complying with state election law;

(2) Conduct statewide training for election officers and county election commissioners;

(3) Adopt all necessary rules regarding training referred to in subdivision (f)(2) of this section and develop procedures for monitoring attendance;

(4) Monitor all election law-related legislation;

(5) Formulate, adopt, and promulgate all necessary rules to assure even and consistent application of voter registration laws and fair and orderly election procedures;

(6)(A) Appoint at least one (1) certified election monitor to a county upon a signed, written request under oath filed with the board and a determination by the board that appointing a monitor is necessary.

> (B) The board shall certify at least one (1) election monitor in each congressional district.
>
> (C) Certified election monitors shall serve as observers for the purpose of reporting to the board on the conduct of the election.
>
> (D) The board may allow for reasonable compensation for election monitors;

(7) Assist the county board of election commissioners in the performance of administrative duties of the election process if the board determines that assistance is necessary and appropriate;

(8)(A) Formulate, adopt, and promulgate all necessary rules to establish uniform and nondiscriminatory administrative complaint procedures consistent with the requirements of Title IV of the federal Help America Vote Act.

> (B) The cost of compliance with Title IV of the federal Help America Vote Act shall be paid from the fund established to comply with the federal Help America Vote Act;

> (9) Investigate alleged violations, render findings, and impose disciplinary action according to § 7-4-118 for violations of election and voter registration laws, except as to § 7-1-103(a)(1)-(4), (6), and (7), and except for any matters relating to campaign finance and disclosure laws which the Arkansas Ethics Commission shall have the power and authority to enforce according to §§ 7-6-217 and 7-6-218;
>
> (10) Examine and approve in accordance with §§ 7-5-503 and 7-5-606 the types of voting machines and electronic vote tabulating devices used in any election; and
>
> (11) Administer reimbursement of election expenses to counties in accordance with § 7-7-201(a) for primary elections, statewide special elections, and nonpartisan general elections.

*Id*. Nothing in Section 7-4-101(f) authorizes the State Board to *command* county election officials to take specific actions in response to a specific event in the course of an ongoing election. In fact, other statutes make clear that only the *county boards of election commissioners* have the *authority* and the *discretion* to do what Plaintiffs seek in this case, namely, order election officials to post notices. *See* Ark. Code Ann. § 7-4-107 (setting forth the duties and authority of county boards of election commissioners to supervise and direct election officials). Simply put, because the State Board has no control over county boards of election commissioners and, more importantly, because only those county boards have control over local election officials, the State Board cannot redress the injuries alleged by Plaintiffs. Likewise, the Court cannot redress the injuries alleged by Plaintiffs by ordering the State Board to do anything.

Plaintiffs' request for a temporary restraining order should be denied because Plaintiffs cannot meet two of the three necessary elements to establish standing and confer jurisdiction on this Court to grant relief against the State Board. The complaint should be dismissed for failure to state a claim for which relief can be granted.

B.     **Sovereign Immunity**

Plaintiffs' complaint against the Members of the State Board is barred by sovereign immunity.  In *Ex parte Young,* 209 U.S. 123, 15 (1908), "the Supreme Court held that the Eleventh Amendment does not bar a suit against a state official to enjoin enforcement of an allegedly unconstitutional statute, *provided that* 'such officer [has] some connection with the enforcement of the act.'" *Reprod. Health Servs. v. Nixon,* 428 F.3d 1139, 1145 (8th Cir.2005) (emphasis added).  Absent that connection, the officer "is merely . . . a representative of the state," and Eleventh Amendment immunity applies.  *Ex parte Young,* 209 U.S. at 157; *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-03 (1984).  The Supreme Court recently explained the purpose behind the *Ex Parte Young* doctrine and the limited circumstances under which sovereign immunity does *not* bar a suit against State officials:  "Resting on the premise—less delicately called a fiction—that  when a federal court commands a state official to do nothing more than refrain from violating federal law, he [or she] is not the State for sovereign-immunity purposes. *The doctrine is limited to that precise situation.*"  *VA Office for Protection & Advocacy v. Stewart*, 131 S.Ct. 1632 (2011) (emphasis added).  The doctrine is narrowly applied to prospective injunctive relief designed to remedy ongoing violations of federal law by State actors.  *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see also Papasan v. Allain*, 478 U.S. 64, 68 (1985).

Because the State Board does not have the authority to order county election officials to post specific notices in specific ways or otherwise conduct elections in accordance with directives of the State Board, Plaintiffs' complaint sues the Members of the State Board as mere representatives of the State.  More importantly, Plaintiffs fail to allege that the State Board has committed and/or continues to commit any ongoing *action* that violates the federal constitution.

The act of which Plaintiffs complain is the Arkansas Supreme Court's ruling invalidating Issue 7. The State Board had nothing to do with that ruling. The complaint against the State Board is barred by sovereign immunity. The request for a temporary restraining order should be denied, and the complaint should be dismissed.

  **C.**  **Electioneering**

The relief sought by Plaintiffs—a notice designed to persuade certain voters to cast a vote in favor of Issue 6—violates Ark. Code Ann. § 7-1-103(9), which prohibits an election official from electioneering on any election day or early-voting day. Ark. Code Ann. § 7-1-103(9). The Arkansas electioneering statute provides:

> (A) No election official acting in his or her official capacity shall do *any electioneering on any election day or any day on which early voting is allowed*. Except as provided in subdivisions (a)(9)(B) and (C) of this section, ***no person shall hand out or distribute*** or offer to hand out or distribute any campaign literature or ***any literature regarding any candidate or issue on the ballot***, solicit signatures on any petition, solicit contributions for any charitable or other purpose, or ***do any electioneering of any kind whatsoever in the building or within one hundred feet (100') of the primary exterior entrance used by voters*** to the building containing the polling place on election day . . . .

*Id*. (emphasis added).

Plaintiffs seek a temporary restraining order "requiring defendants to order that the actual notice [proposed by plaintiffs] be printed and furnished to each County Election Commission with instructions to immediately begin handing a copy of the notice to each voter; that, alternatively, the Court require posting of the notice . . . in at least three prominent places at each voting location." Complaint, p.18-19. Plaintiffs' proposal violates the electioneering prohibition in three ways. First, the notice itself is a classic example of engineering designed to direct votes

in favor of a specific issue on the ballot—Issue 6. Plaintiffs even admit that their notice is designed to convince voters who would have voted for or against Issue 7 to now vote for Issue 6. *See id.*, p. 2. That is electioneering, which is prohibited for good reason. Second, the electioneering statute expressly prohibits Plaintiffs' preferred proposal of distributing Plaintiffs' notices to voters. No election official can distribute "any literature" relating to "any . . . issue on the ballot"—yet Plaintiffs ask the Court to order the State Board and the Secretary of State to order election officials to "immediately begin handing a copy of the notice to each voter." But no election officials can engage in any electioneering within 100 feet of a poll entrance. Third, Plaintiffs' alternative proposal also violates the electioneering statute—Plaintiffs ask the Court to order the defendants to order election officials to place Plaintiffs' notice in three prominent places at each polling site. But on its face, Plaintiffs' notice encourages voters to vote for a certain issue on the ballot and therefore constitutes electioneering. As explained at the outset, the Secretary of State has apparently already provided a proper and lawful notice that informs voters that Issue 7 (along with Issues 4 and 5) has been stricken, without electioneering. *See* State Board's Exhibit A. Neither Plaintiffs, nor anyone else, are entitled to any further relief.

The Court should reject Plaintiffs' effort to obtain a Court order forcing the defendants to violate Arkansas law. The Court need not consider this issue because the complaint is barred for lack of standing and lack of jurisdiction and the complaint is barred by sovereign immunity—but even if Plaintiffs could cross the threshold into consideration of relief, the requested relief is plainly barred by the electioneering statute.

### D. Abstention

The Court should abstain from this case and refrain from injecting itself into the Arkansas election and issues regarding proposed measures of Arkansas law that have already been

addressed by the Arkansas Supreme Court. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) (abstention warranted when there are parallel state and federal proceedings); *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941) (abstention warranted based on considerations of the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy; available state remedies; whether the challenged state law is unclear; whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and whether abstention will avoid unnecessary federal interference in state operations); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (abstention warranted under the *Rooker-Feldman* doctrine where action seeks review of, or relief from, state-court judgments).

## IV. Conclusion

Plaintiffs lack standing because they cannot establish that their injury is fairly traceable to actions taken by the Members of the State Board—it is clear that the *action* about which Plaintiffs complain is a ruling by the Arkansas Supreme Court. Plaintiffs also lack standing because they cannot establish that the Members of the State Board have the legal authority to order county election officials to do anything—in other words, Plaintiffs have sued the wrong defendants. The suit is also separately barred by sovereign immunity under the Eleventh Amendment. Even if Plaintiffs could cross these threshold bars, the relief requested by Plaintiffs is plainly prohibited by the Arkansas electioneering statute. Even if the complaint and the requested relief were not barred by law, the Court should abstain from injecting itself into the Arkansas election and issues regarding proposed measures of Arkansas law that have already been addressed by the Arkansas Supreme Court. Plaintiffs' request for a temporary restraining

order should be denied, and the complaint should be dismissed for failure to state a claim for which relief can be granted.

WHEREFORE, the Members of the State Board of Election Commissioners pray that Plaintiffs' request for a temporary restraining order is denied, that the complaint is dismissed, and for all other just and appropriate relief.

                                    Respectfully Submitted,

                                    Leslie Rutledge
                                    Arkansas Attorney General

By:   /s/ Colin R. Jorgensen
        Arkansas Bar No. 2004078
        Assistant Attorney General
        323 Center Street, Suite 200
        Little Rock, AR 72201
        Phone: (501) 682-3997
        Fax: (501) 682-2591
        Email: colin.jorgensen@arkansasag.gov

*Attorneys for the Members of the Arkansas State Board of Election Commissioners.*

## CERTIFICATE OF SERVICE

I, Colin R. Jorgensen, Assistant Attorney General, do hereby certify that on this 4th day of November, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will provide service upon registered users.

                                    /s/ Colin R. Jorgensen